UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NEW YORK REPUBLICAN STATE
COMMITTEE, *et al.*,

                        Plaintiffs,

           - against -

NEW YORK STATE BOARD OF
ELECTIONS, *et al.*,
                    Defendants.
-----------------------------------------------------------------X

**FILED**
**CLERK**

6/29/2026 2:01 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM
AND ORDER**

Civil Action
No. 25-6083 (GRB)(AYS)

**GARY R. BROWN, United States District Judge**:

Considering this action was commenced only eight months ago, its posture is shocking in its convolution.  Plaintiffs, a collection of Republican Party associations, local governments, and individuals, brought this challenge to New York's Even Year Election Law ("EYEL") in October 2025.  Presently before the Court, the product of byzantine motion practice, are three pendant motions: (1) a motion to dismiss filed by the State of New York (the "State") and Governor Kathleen Hochul ("Governor Hochul"), Docket Entry ("DE") 40, in which the remaining defendant, the New York State Board of Elections (the "Board of Elections," "Board," or "BOE") did not join, *see* DE 27;  (2) a motion to amend the complaint, filed by plaintiffs after briefing on the motion to dismiss had substantially concluded,  DE 45; and (3) a motion for a preliminary injunction filed by plaintiffs.  DE 47.

For the reasons that follow, the motion to dismiss is GRANTED.  The First Amended Complaint is dismissed in its entirety.  The governmental plaintiffs' claims are dismissed with prejudice, and those plaintiffs are terminated from the action.  The

1

claims against the defendants named in the First Amended Complaint are likewise dismissed with prejudice.  The motion for a preliminary injunction is necessarily denied as moot.  The remaining plaintiffs are granted leave to file an amended complaint, subject to the restrictions identified herein.  The motion to amend is otherwise denied as moot.

**Factual Background and Procedural History**

Before moving to the substance of the motions, the history of this case requires elaboration.

The EYEL was enacted in December 2023 and consolidated most local and state elections in New York onto the same even-year schedule as federal elections.  DE 18 (First Am. Compl.) ¶ 53.  Governor Hochul signed the bill into law on December 22, 2023, and the EYEL will become operative for the 2026 election cycle, for which primaries have already substantively concluded.  *Id*. ¶¶ 57–58.  Importantly, the EYEL also amends Municipal Home Rule Law § 34(3) to prohibit any county charter or local law from superseding the new state requirement.  In other words, other than exceptions not relevant here, counties and municipalities must comply with the EYEL calendar regardless of their preference or their voters' preference.  *Id*. ¶ 58.  This, the First Amended Complaint reports, was intolerable for several local governments, necessitating legal action.  *Id*. ¶¶ 54–56.

Plaintiffs commenced this action to challenge the EYEL on October 30, 2025.  DE 1.  On December 8, 2025, the State and Governor Hochul sought a premotion conference

2

in anticipation of filing a motion to dismiss before the Honorable Joan M. Azrack.  DE 15.  Judge Azrack recused on December 19, 2025, after which the case was ultimately reassigned to the undersigned.  DE 17.  On December 29, 2025, plaintiffs—a collection of organizations and individuals that has waxed and waned since inception but currently consists of the New York State Republican Committee, local Republican organizations, local government subdivisions, and individual candidates, among others—amended the complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1).  DE 18.  The resultant First Amended Complaint remains the operative complaint at this juncture and initially stated two claims: a claim seeking relief for purported First Amendment violations pursuant to 42 U.S.C. § 1983 and a claim under Section II of the Voting Rights Act of 1965.[1]  As a result of the amendment, the Court canceled the previously-scheduled premotion conference without prejudice.

On January 12, 2026, the State and Governor Hochul renewed their request for a premotion conference.  DE 24.  However, on March 5, the State and Governor Hochul informed the Court that plaintiffs in a parallel state proceeding that challenged the EYEL under the New York State Constitution had petitioned for a writ of certiorari before the United States Supreme Court, following an adverse decision by the New York Court of Appeals.  DE 34; *see also County of Onondaga v. State*, 44 N.Y.3d 639 (2025).  As a result, the Court adjourned the conference *sine die*.  On March 25, the parties informed the Court that the Supreme Court had denied *certiorari*.  DEs 36–37; *see also*

---

[1] Codified at 52 U.S.C. § 10301.

*Rockland Cnty., New York v. New York*, 224 L. Ed. 2d 274 (Mar. 23, 2026). The Court thereafter rescheduled the proceeding and, to expedite consideration of the suit given the importance of resolving these proceedings in advance of Election Day, waived its pre-motion conference requirement, set a condensed briefing schedule, and converted the rescheduled conference to an oral argument on the motion. *See* Order dated May 13, 2026.

The State and Governor Hochul served their motion to dismiss on May 27, 2026, as anticipated. DE 40-1. However, confusion began on June 10, when the plaintiffs filed both their opposition as to the Section 1983 claim and a stipulation of dismissal both as to several plaintiffs and as to the VRA claim in its entirety.[2] DEs 41–42. Another individual plaintiff filed a separate notice for voluntary dismissal soon after. DE 44.

Perplexingly, on June 16, 2026, plaintiffs then filed a letter addressed to Judge Shields seeking leave to amend their complaint for the second time.[3] DE 45. In the letter, plaintiffs sought permission to both add several new plaintiffs and also to add as defendants the individual commissioners of the New York State Board of Elections. According to the letter, the proposed amended complaint would add no new claims, and the letter does not indicate that any new factual allegations would be included. *Id*.

---

[2] Specifically, claims asserted by: Nassau County; Orange County; the Town of Hempstead; the Town of North Hempstead; the Town of Brookhaven; the Town of Islip; the Town of Oyster Bay; the Town of Riverhead; and several individual plaintiffs were dismissed.

[3] The letter was a request for a premotion conference to seek leave to move to amend the First Amended Complaint.

Plaintiffs informed the Court in the letter that the State and Governor Hochul opposed the request to amend, which came six days after plaintiffs opposed the State's motion, one day before the State was scheduled to submit its reply, and two days before oral argument. The State and Governor Hochul thereafter submitted their reply on June 17, 2026.

On June 18, 2026, the Court held oral argument on the motion to dismiss and discussed with the parties the pendant motion to amend. Upon an inquiry by the Court, the parties agreed that the Court may consider the motion to dismiss first, though plaintiffs requested that if the motion to dismiss is granted, leave to amend be granted as well. *See* Tr. of Oral Argument dated June 18, 2026, at 24.

On June 26, subsequent to the pre-motion conference, plaintiffs moved for a preliminary injunction.[4] DE 47.

**Standard of Review**

A Rule 12(b)(6) motion to dismiss poses the question of whether, assuming the allegations of the complaint to be true solely for the purposes of the motion, the Complaint sets forth factual material to render the claims plausible. *Burris v. Nassau*

---

[4] To be precise, as with the motion to amend, plaintiffs' submission is actually a letter brief seeking a pre-motion conference to request leave to file a full motion for a preliminary injunction. But however styled, the motion would be moot due to the dismissal of the First Amended Complaint. *See Draves v. City of New York*, No. 25-CV-3305 (EK)(PCG), 2026 WL 1256983, at *2 (E.D.N.Y. May 7, 2026). The distinction is therefore immaterial.

*Cnty. Dist. Att'y*, No. 14-CV-5540 (JFB) (GRB), 2017 WL 9485714 at \*3–4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017).

Where, as here, a plaintiff moves for leave to amend his complaint while a motion to dismiss that complaint is pending, the district court "has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the [proposed] amended complaint." *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016) (collecting cases). Alternatively, the Court may simply grant the motion to amend and moot the pending motions to dismiss, without prejudice to defendants' right to file renewed motions to dismiss directed at the amended pleading. *Id*. This approach has been endorsed by the Second Circuit, which explained that when choosing among the permissible courses of action, the court should strive to "promote[ ] judicial economy" and "obviate[e] the need for multiple rounds of briefing addressing complaints that are legally insufficient." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020).

**Legal Analysis**

  I.   **Overview**

In their motion to dismiss, the Court and Governor Hochul raise several potential bases for dismissal, both as to jurisdiction and as to the merits. Of course, "[t]his Court [also] has an obligation to examine its subject matter jurisdiction *sua*

*sponte.*" *Alvarez v. Doe*, No. 25-CV-5042 (GRB)(SIL), 2025 WL 3172330, at *1 (E.D.N.Y. Nov. 13, 2025) (citing *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006)).

In light of those principles and the Second Circuit's guidance that courts should prioritize expedition in these circumstances, the Court determines that several dispositive issues raised in the motion to dismiss may be adjudicated at this stage in light of the amended complaint. *Pettaway*, 955 F.3d at 303. Those dispositive issues fall into two categories—the governmental plaintiffs are prohibited under several doctrines from asserting claims in this action, and the defendants named in the First Amended Complaint are immune from suit under the Eleventh Amendment.

## II.    Governmental Plaintiffs

As a preliminary matter, the governmental plaintiffs[5] are not proper claimants in this action for three reasons. First, the governmental plaintiffs are barred from asserting any challenges against the EYEL due to res judicata. Second, the governmental plaintiffs lack Article III standing to bring their claims. Third, Section 1983 does not create a cause of action for the governmental plaintiffs. Accordingly, their Section 1983 claims are dismissed with prejudice against *all* defendants, including any defendants plaintiffs seek to add through amendment.

---

[5] The remaining governmental plaintiffs are the County of Suffolk and the Town of Huntington. *See* DE 41.

7

a. **Res Judicata**

Under New York law, res judicata or claim preclusion bars litigation on a claim if "there is: (1) a judgment on the merits from a prior action; (2) between the same parties; and (3) involving the same subject matter." *VDARE Found., Inc. v. James*, 162 F.4th 77, 83 (2d Cir. 2025) (citing *In re Hunter*, 4 N.Y.3d 260, 269 (2005) (cleaned up). The doctrine "bars future litigation of claims that were brought or could have been brought in a prior proceeding that resulted in a final judgment on the merits." *W.J.F. Realty Corp. v. Town of Southampton*, 220 F. Supp. 2d 140, 146 (E.D.N.Y. 2002) (citing *Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan*, 263 F.3d 196, 200 (2d Cir. 2001)). Under New York's transactional res judicata regime, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) (quoting *In re Derek Josey*, 9 N.Y.3d 386, 389–90 (N.Y. 2007)). The claims here plainly regard the same "transaction" (the passage of the EYEL) as *County of Onondaga*. Accordingly, no claims asserted here are protected from a res judicata analysis merely because they were not asserted in the state court action.

The governmental plaintiffs raise no above the line argument against res judicata, relegating all discussion to a footnote. "An argument mentioned only in a footnote is not adequately raised and need not be considered." *SEC v. Allaire*, No. 03-CV-4087 (DLC), 2019 WL 6114484, at *3 (S.D.N.Y. Nov. 18, 2019), *aff'd sub nom. SEC v. Romeril*, 15 F.4th 166 (2d Cir. 2021) (citing *Niagara Mohawk Power Corp. v. Hudson River-*

8

*Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012)).  Therefore, the governmental

plaintiffs' arguments against res judicata are not properly preserved.

Even if the arguments were preserved, however, res judicata is appropriately

applied against the governmental plaintiffs.

The parties substantively dispute only the second black letter requirement of res

judicata, namely that the case involve the same parties or parties in privity.  Plaintiffs

argue that the addition of the Board of Elections (which was not sued in *County of*

*Onondaga*) to the instant case destroys mutuality of parties such that res judicata is not

available.  However, the inclusion of the Board of Elections raised no issues that could

not have been adjudicated in state court.  So, "the core elements of these claims thus rest

on the same transactions and occurrences that underlay" *County of Onondaga*, and the

current action is barred as a result.  *Cameron v. Church*, 253 F. Supp. 2d 611, 623

(S.D.N.Y. 2003) ("*Res judicata* operates to preclude claims, rather than particular

configurations of parties; Plaintiff's addition of new defendants, in the context of

allegations of their involvement in the series of alleged deprivations, does not entitle

him to revive the previously-dismissed claims."); *see also Big J Dev. Co. v. Big J Dev. Co.*,

997 N.Y.S.2d 97 (N.Y. Sup. 2014) ("A judgment is not prevented from having a res

judicata effect in a subsequent action involving the same issue by the presence of an

additional party as a defendant").[6]  In other words, because the New York Court of

---

[6] In addition, as an agency of the State of New York, the Board may be in privity with
the State by default.  *Cf. Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 417–18
(E.D.N.Y. 2010), *aff'd*, 438 F. App'x 31 (2d Cir. 2011) ("An agency of the United States is
[] considered to be the same party as the United States or in privity with it for *res*

9

Appeals reached the merits of plaintiffs' First Amendment claim, the inclusion of another agency defendant does nothing to alter the legal analysis the Court of Appeals performed, particularly where New York State was already a defendant.

The governmental plaintiffs here fall within the well-established bounds of res judicata. They sued New York State entities in a previous action and lost on the merits of the claim for which the identity of the defendant would raise no issue. The belated attempt to add a defendant against which claims could have been asserted in *County of Onondaga* and whose presence or absence could not alter the findings and judgment rendered by the New York Court of Appeals does not disturb the privity requirement. [7]

Plaintiffs mount an alternate argument based on the equitable concern that the state action did not permit the parties to "develop a full federal record in support of these federal claims." DE 42 at 10. That argument is similarly unpersuasive.

---

*judicata* purposes."); *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.").

[7] Plaintiffs' citation to *City of New York v. Welsbach Elec. Corp.*, 9 N.Y.3d 124 (2007) is inapposite. There, a negligence case in tort, victims of a car accident sued the City of New York and the city contractor in charge of maintaining the relevant traffic signals. The contractor was found not liable to the accident plaintiffs because it owed no duty to the public, but the City was found fully liable for the plaintiffs' injuries. The City then sued the contractor for indemnification. Because the City and the contractor, the adversaries in the subsequent proceeding, had both been defendants in the initial action, the Court of Appeals found that the City was not barred from suing the contractor for indemnification. The Court of Appeals explained that the mere availability of permissive cross-claims in the initial action was insufficient to create res judicata absent an actual adversarial suit between the City and the contractor. That principle does not apply here.

New York courts are "court[s] of general jurisdiction and [are] fully competent to adjudicate federal constitutional and statutory claims." *Jones v. HSBC Bank USA Nat'l Ass'n*, No. 23-CV-7773, 2024 WL 2766515, at *8 (E.D.N.Y. May 30, 2024). The Supreme Court has been explicit that "nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision" so long as "the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights." *Allen v. McCurry*, 449 U.S. 90, 103–04 (1980). And the Supreme Court has also expressly recognized that New York state courts are empowered to decide Section 1983 cases for damages or injunctive relief. *See Haywood v. Drown*, 556 U.S. 729, 739 (2009). Cases in this Circuit have consistently recognized that res judicata "applies with equal force to suits brought under 42 U.S.C. § 1983, subsequent to the entry of a final order in a state court action." *Vasquez v. Comm'r of Soc. Servs.*, No. 91-CV-4902 (PKL), 1992 WL 58855, at *4 (S.D.N.Y. Mar. 17, 1992), *aff'd* 990 F.2d 622 (2d Cir. 1993).

Plaintiffs' conclusory assertion that they were prevented in *County of Onondaga* from developing a full factual record on the federal issues is therefore insufficient to bar application of res judicata as a matter of equity. Plaintiffs come nowhere close to the requisite showing that the New York forum was unwilling or unable to protect federal rights, given the Supreme Court precedent discussed *supra*.

11

Accordingly, res judicata bars the governmental plaintiffs' claims in this action. The Court makes no findings at this juncture as to the application of res judicata against any other plaintiffs.

**b. Standing**

Nor could the governmental plaintiffs assert Section 1983 claims, even were those claims not precluded, since those plaintiffs lack Article III standing.

To begin, plaintiffs may not avail themselves of organizational standing principles. Whether governmental plaintiffs are generally permitted to invoke organizational standing is an unsettled question in this Circuit, but the answer is immaterial because even if organizational standing were available to the governmental plaintiffs in certain instances, organizational standing is not a cognizable theory under Section 1983. "It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983, as we have interpreted the rights § 1983 secures to be personal to those purportedly injured." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011); *see also Blakeman v. James*, No. 24-CV-1655 (NJC) (LGD), 2024 WL 3201671, at *17 (E.D.N.Y. Apr. 4, 2024) ("even if Nassau County could avail itself of organizational standing doctrine, it would not be able to assert the equal protection rights of its female residents. It is well established in the Second Circuit that an organization lacks 'standing to assert the rights of its members' under 42 U.S.C. § 1983.") (quoting *Connecticut Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 447 (2d Cir. 2021)); *Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents*, 809 F. Supp. 3d 33, 75 (E.D.N.Y. 2025) ("just like Massapequa cannot sue to vindicate the First

12

Amendment rights of its employees, the [Massapequa] Board [of Education] cannot do the same for its members.").[8]

To be sure, "a municipal corporation, does not require organizational standing" to sue, and a county would be subject to the same analysis. *Hudson Riverkeeper Fund, Inc. v. Atl. Richfield Co.*, 138 F. Supp. 2d 482, 486 (S.D.N.Y. 2001) (citing *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 110–12 (1979)).  In such circumstances, however, the governmental plaintiff must suffer a concrete injury to its own interests. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 446, 458 (S.D.N.Y. 2009) (applying traditional standing principles to municipal plaintiffs); *Doe v. Hochul*, 139 F.4th 165, 177 (2d Cir. 2025) (plaintiffs "may not 'rest a claim to relief on the legal rights or interests' of others.") (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)).

Specifically, "[t]o establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Silva v. Farrish*, 47 F.4th 78, 86 (2d Cir. 2022) (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016)).  Here, the governmental plaintiffs lack standing because they have suffered no legally cognizable injury.  Those plaintiffs are in actuality akin to nominal defendants—they are parties against whom the individual plaintiffs would welcome an injunction.  There

---

[8] Though the Court did not at this stage dismiss with prejudice the claims by the various party plaintiffs, the Court notes that the restrictions on organizational standing expressed as to the governmental plaintiffs would apply to the party plaintiffs as well. Thus, in any amended complaint, the party plaintiffs must adequately allege a basis for Article III standing should they wish to proceed in this action.

is no allegation, plausible or otherwise, that the municipalities suffer any economic harm as a result of the EYEL.  Nor are there any allegations that the municipal defendants will suffer any other sort of injury in fact that permits relief under Article III.

### c.   Lack of Cause of Action Under *Lexmark*

Finally, even if the municipalities suffered a concrete injury, the Court finds that Section 1983 does not provide municipalities with a cause of action.[9] *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) ("the question this case presents is whether [the instant plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue under [the relevant statute]").  The majority of the circuits to have addressed this question have found that even after *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipalities are not "persons" who may seek relief under Section 1983, even if they are susceptible to suit under the statute.  *See Rockford Bd. of Educ., Sch. Dist. No. 205 v. Illinois State Bd. of Educ.*, 150 F.3d 686, 688 (7th Cir. 1998) ("a city or other municipality cannot bring a suit under 42 U.S.C. § 1983"); *cf. Rural Water Dist. No. 1, Ellsworth Cnty., Kansas v. City of Wilson, Kansas*, 243 F.3d 1263, 1274 (10th Cir. 2001) (finding that Section 1983 authorizes municipalities to sue for violations of federal law but not for "constitutional violations, which generally cannot be asserted by municipalities under any statute.").  And the district courts that have

---

[9] Although this issue was not raised in the parties' briefing, the Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6).  *See Placide-Eugene v. Visiting Nurse Serv. of New York*, No. 12-CV-2785 (ADS)(ARL), 2013 WL 2383310, at *13 (E.D.N.Y. May 30, 2013) ("the Court has the power to dismiss claims *sua sponte* for a failure to state a claim") (citing *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)).

addressed the question in this Circuit have concurred.  *See City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 368 (S.D.N.Y. 2000) ("Congress intended Section 1983 to provide private citizens with a remedy against state action.  It would run counter to that intent to allow a governmental subdivision to sue another governmental subdivision" under the statute).

Extending a Section 1983 remedy to political subdivisions would undermine the purposes of the statute.  Therefore, even if the governmental plaintiffs had standing to bring a claim in an Article III court, their lack of a valid cause of action would be an independent basis to dismiss their claims.

### d.  Conclusion

For the reasons discussed, the governmental plaintiffs' claims are dismissed with prejudice.  The Court makes no holding regarding the aforementioned issues as to any other defendants in this action.[10]

---

[10] Though moot following the Court's dismissal of the governmental plaintiffs' claims, the Court also notes the evident conflict concerns presented by plaintiffs' counsel's representation of both partisan political organizations and non-partisan governments in the same action.  Given the lack of any evident injury suffered by the governmental plaintiffs, their presence in this lawsuit is troubling.  This is especially so in light of the substantial legal expenses reportedly billed to the governmental plaintiffs by counsel. *See* Denise Civiletti, Riverhead Withdraws from Even-Year Election Law Case after Paying at least $207K in Legal Fees, *RiverheadLOCAL* (Jun. 16, 2026) available at https://riverheadlocal.com/2026/06/16/ riverhead-withdraws-from-even-year-election-law-case-after-paying-at-least-207k-in-legal-fees/ (reporting legal fees in excess of $1.6 million paid to counsel by village plaintiffs between June and December 2025); Denise Civiletti, Doroski Moves to Pull Suffolk County from Costly Even-Year Election Law Federal Lawsuit, *RiverheadLOCAL* (Jun. 25, 2026) available at https://riverheadlocal.com/2026/06/25/doroski-moves-to-pull-suffolk-county-from-

15

### III.    Sovereign Immunity

As for the remaining plaintiffs, the Eleventh Amendment bars their claims against the State, the Board, and Governor Hochul.  "Absent a waiver on the part of the state, or a valid congressional override, the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against the states."  *Nolan v. Cuomo*, No. 11-CV-5827 (DRH)(AKT), 2013 WL 168674, at *7 (E.D.N.Y. Jan. 16, 2013) (quoting *Farid v. Smith*, 850 F.2d 917, 920–21 (2d Cir. 1988); *see also Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 362 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). And Congress has not abrogated sovereign immunity over Section 1983 claims.  *Hahn v. New York*, 825 F. App'x 53, 54 (2d Cir. 2020) (citing *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990)); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (explaining that the Supreme Court has made clear "[t]hat Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal–state balance in that respect[.]").  Nor has New York waived sovereign immunity over such claims.  *Hahn*, 825 F. App'x at 54 (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39–40 (2d Cir. 1977)).

Accordingly, the State is not subject to suit under Section 1983, and that claim, as asserted against the State, is dismissed with prejudice.

---

costly-even-year-election-law-federal-lawsuit/ (reporting over $200,000 in legal fees paid to counsel by Suffolk County).

Eleventh Amendment immunity similarly applies to "suits against 'state agents and state instrumentalities that are, effectively, arms of a state.'" *Powell v. Lab Corp.*, No. 17-CV-3632 (JMA)(GRB), 2018 WL 6814371, at \*6 (E.D.N.Y. Dec. 27, 2018), *aff'd*, 789 F. App'x 237 (2d Cir. 2019) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366–68 (2d Cir. 2009)). It is well-established that the Board of Elections is one such instrumentality of New York State. *See Ulanov v. New York State Bd. of Elections*, No. 22-CV-193 (AMD) (LB), 2022 WL 173112, at \*2 (E.D.N.Y. Jan. 19, 2022) (collecting cases).[11]

Therefore, the Section 1983 claim against the Board of Elections is dismissed with prejudice as well.

Finally, it is likewise black-letter law that "[w]hen state officials are sued under § 1983 in their official capacity, they are immune from suit by virtue of the Eleventh

---

[11] Plaintiffs argue that the Board did not move to dismiss the complaint and therefore should not be permitted to join the State and Governor Hochul's motion. Regardless of whether the Board is deemed to have joined that motion, however, "[u]nder controlling authority, because sovereign immunity is jurisdictional in nature, questions of sovereign immunity implicate a court's subject matter jurisdiction." *Hyped Holdings LLC v. United States*, No. 22-CV-5340 (HG)(JMW), 2023 WL 6121784, at \*3 (E.D.N.Y. Sept. 19, 2023). That principle follows from the tenet that a state must affirmatively waive its sovereign immunity to be amenable to suit, or else Congress must abrogate the state's sovereign immunity for a cause of action against the state to be pursued. And it is "well-established" both that "New York state has not waived its sovereign immunity from Section 1983 claims" and that "Congress did not abrogate that immunity when it enacted Section 1983." *See Smith v. Troulakis*, No. 22-CV-3441(GRB)(LGD), 2022 WL 3139118, at \*3 (E.D.N.Y. Aug. 5, 2022) (citing first *Mamot v. Bd. of Regents*, 367 Fed. App'x 191, 192 (2d Cir. 2010) and citing second *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court therefore has a responsibility to examine issues of Eleventh Amendment immunity *sua sponte* on subject matter jurisdiction grounds, even assuming that the Board did not join in the motion to dismiss. *See Alvarez v. Doe*, 2025 WL 3172330, at \*1, *supra*. Alternatively, the Court has the authority to dismiss the claim *sua sponte* under Rule 12(b)(6). *See Placide-Eugene*, 2013 WL 2383310, at \*13, *supra*.

17

Amendment." *Rivera v. Mattingly*, 604 F. Supp. 2d 634, 637 (S.D.N.Y. 2009).  The Supreme Court has explained that permitting such suits "would allow [plaintiffs] to circumvent congressional intent by a mere pleading device," for "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71.

Plaintiffs correctly highlight the *Ex parte Young* exception to the general rule that state officials are immune from suit in their official capacity.  Under that doctrine, an official cannot be sued for damages but may be sued to enjoin prospectively a violation of constitutional rights.  *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 352 (S.D.N.Y. 2017) ("to the extent that claims are brought here against a defendant in an official capacity, state officers may properly be sued in that capacity for *prospective* relief under the doctrine of *Ex parte Young*") (emphasis in original).  However, to invoke the exception, "the state officer against whom a suit is brought must have some connection with the enforcement of the act that is in continued violation of federal law." *Jeannot v. New York State*, 762 F. Supp. 3d 217, 233 (E.D.N.Y. 2025) (quoting *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 373 (2d Cir. 2005)).  Courts have elaborated that the connection must consist of "both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Citizens Union of City of New York v. Att'y Gen. of New York*, No. 16-CV-9592 (RMB)(KHP), 2017 WL 2984167, at *4 (S.D.N.Y. June 23, 2017); *see also Kelly v. New York State Civ. Serv. Comm'n*, No. 14-CV-716 (VB), 2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015), *aff'd* 632 F. App'x 17 (2d Cir. 2016) ("For a

18

state officer to be a proper party, both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty are needed.").

Governor Hochul is not the proper defendant for an *Ex parte Young* action challenging the EYEL.  While plaintiffs argue that Governor Hochul "signed the bill into law" and "is the highest-ranking government official responsible for implementing the EYEL," First Am. Compl. ¶¶ 41, 57, those allegations are not sufficient to overcome the Eleventh Amendment, even at the motion to dismiss stage.  Governor Hochul's signature is plainly insufficient to create liability, for "[t]he well-settled doctrine of absolute legislative immunity [] bars actions against . . . governors . . . on the basis of their role[] in enacting or signing legislation." *Warden v. Pataki*, 35 F. Supp. 2d 354, 358 (S.D.N.Y. 1999), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999) (citing *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731–34 (1980)). And courts in this Circuit have held that a governor's appointment authority does not establish the requisite nexus between the governor's duties and the challenged statute. *Miller v. Carroll*, No. 21-CV-14 (VLB), 2021 WL 1964604, at *10 (D. Conn. May 17, 2021) ("the Governor did not have a sufficient connection because the only alleged connection, the power to appoint members of the Board, was not alone enough to establish the connection requirement under *Ex parte Young*) (citing *Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011) (collecting cases))).

Indeed, this principle stretches back to *Ex parte Young* itself, in which Justice Peckham explained that where the state officials named in the suit did not hold "any special relation to the particular statute alleged to be unconstitutional" and "were not

19

expressly directed to see to its enforcement," immunity would still attach.  209 U.S. 123, 157 (1908).  Otherwise, the opinion elaborated, "the constitutionality of every act passed by the legislature could be tested by a suit against the governor . . . based upon the theory that the [governor], as the executive of the state, was, in a general sense, charged with the execution of all its laws," and such a rule would be inconsistent "with the fundamental principle that [states] cannot, without their assent, be brought into any court at the suit of private persons."  *Id.*

Applying this principle, a governor's appointment authority is insufficient to demonstrate a particularized duty to enforce a statute.  The only relief that could be entered against Governor Hochul would be to enjoin her from nominating commissioners to the Board of Elections.  That remedy is both too expansive and too narrow: expansive because such an injunction could inhibit other functions of the Board of Elections; narrow because such an injunction would not prevent the current commissioners from enforcing the EYEL.  In both respects, that relief would stray far afield of the purpose of *Ex parte Young*, namely to provide narrow equitable relief against the specific state officials implementing unconstitutional statutes.  *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 53 (2021) ("In *Ex parte Young*, this Court recognized that use of this negative injunction against a governmental defendant provides a narrow exception to sovereign immunity . . . , [which] extends no further than the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary

Act.") (Thomas, J., concurring in part).  As such, the Governor is not the proper party against which to seek relief on these facts.

Because the Section 1983 claim against the State, Governor Hochul, and the Board of Elections fails on sovereign immunity grounds, and there is no evident way through which the plaintiffs could remedy this pleading defect, the Section 1983 claim is dismissed with prejudice as to those defendants.[12]  The Court does not here reach the issue of whether the Eleventh Amendment would bar suit against the individual commissioners of the Board of Elections.

**Conclusion**

Accordingly, all of the governmental plaintiffs' claims are dismissed with prejudice, and they are terminated as parties in this action.  The claims by the remaining defendants against the State, the Board of Elections, and Governor Hochul are likewise dismissed with prejudice.  The First Amended Complaint is therefore dismissed in full, and the motion for a preliminary injunction is consequently denied as moot.  The non-municipal plaintiffs are granted leave to file a Second Amended Complaint to assert a

---

[12] For related reasons, Plaintiffs' claim would also fall on statutory standing grounds, had the Eleventh Amendment not barred suit.  Section 1983 regulates only "person[s]," and neither New York, its agencies nor Governor Hochul are "persons" under the statute.  *See Forziano v. Indep. Grp. Home Living Program, Inc.*, No. 13-CV-0370, 2014 WL 1277912, at *6 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 613 F. App'x 15 (2d Cir. 2015) ("even if Eleventh Amendment immunity did not bar Plaintiffs' Section 1983 claims against the State Defendants, those claims would still be subject to dismissal since '[n]either a State nor its officials acting in their official capacities are 'persons' under § 1983.'") (quoting *Will*, 491 U.S. at 71).

claim against the individual commissioners of the Board of Elections or other claims not inconsistent with this opinion, should they choose to do so.  The motion to amend is otherwise denied as moot.

   **SO ORDERED.**

  Dated: June 29, 2026
     Central Islip, New York

           */s/ Gary R. Brown*
           GARY R. BROWN
           United States District Judge