# BREWER
### ATTORNEYS & COUNSELORS

August 10, 2026

**Via ECF:**
The Honorable Gary R. Brown
United States District Judge, Eastern District of New York
100 Federal Plaza, Central Islip, New York 11722

Re: *N.Y. Rep. State Comm., et al. v. Kosinski, et al.* - Case No.: 2:25-cv-06083
     Pre-motion Letter Seeking Leave to Apply for a Preliminary Injunction

Dear Judge Brown:

Pursuant to Your Honor's Individual Rule II(g), Plaintiffs request leave to move under Fed. R. Civ. P. 65 to enjoin Defendants from enforcing the Even Year Election Law ("EYEL") as applied to the Candidate Plaintiffs who must stand for election in November 2026.[1]

**The Motion:** The Candidate Plaintiffs ran in November 2025 and, solely because the EYEL truncated their terms, must run again in November 2026. SAC ¶¶ 11-21, 43. The motion asks only that the status quo ante[2] be preserved pending merits adjudication, and only as to the Candidate Plaintiffs. Following the Court's June 29, 2026 Order (DE 48), the SAC names the four Board Commissioners in their official capacities, SAC ¶¶ 22-25. They are proper defendants: the Board acts only through its Commissioners, who will collectively administer the 2026 cycle for the offices the EYEL consolidates. Election Law § 3-102(1)-(2); SAC ¶ 102.

**Standing:** In *Bost v. Illinois State Board of Elections*, 607 U.S. 71 (2026), the Supreme Court held that a candidate has Article III standing to challenge the rules governing his own election, because a candidate is a direct participant in the contest with a concrete, particularized interest in the legality of those rules. The Court rejected any requirement that a candidate show a substantial risk of losing, of missing a vote threshold, or a minimum threshold of financial or reputational harm. *Id* at 80-1. The EYEL dictates when, and on what ballot, the Candidate Plaintiffs' races occur. SAC ¶¶ 42-49, 74-78. They also satisfy the reasoning espoused by the concurrence: the EYEL compels them to spend materially more to reach the same voters. SAC ¶¶ 55, 57-58, 88.

**Likelihood of Success—Governing Law:** *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), weigh "the character and magnitude" of the burden created by the changes against "the precise interests put forward by the State," *Anderson*, 460 U.S. at 789, and where the burden is severe the law must be "narrowly drawn to advance a state interest of compelling importance," *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289

---

[1] The Moving Candidate Plaintiffs are DeSena, Ferretti, Pilip, Colavita, and Wohl.

[2] The status quo preserved by an injunction is "the last actual, peaceable uncontested status which preceded the pending controversy." *Sunrise Dev., Inc. v. Town of Huntington*, 62 F. Supp. 2d 762, 772 (E.D.N.Y. 1999) (cleaned up). That is the pre-EYEL odd-year cycle, in which local races proceeded without statewide and federal contests, free of the burdens created by the EYEL. SAC ¶¶ 2, 32-36, 56.

**BREWER**

(1992)). A law need not ban speech; it is enough that it "raises a barrier to entry—thus abridging political speech." *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 304 (2022). In this Circuit, an election law imposing "some burden" on associational rights triggers that scrutiny. *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 108-09 (2d Cir. 2008); *accord Yang v. Kosinski*, 960 F.3d 119, 129-32 (2d Cir. 2020).

**The Burden Is Severe and Strict Scrutiny Applies:** *Kim v. Hanlon*, 99 F.4th 140 (3d Cir. 2024), is an important analogue. There, the Third Circuit affirmed a preliminary injunction against a ballot structure that excluded no one but relegated disfavored candidates to "Ballot Siberia." *Id.* at 157. *First*, as in *Kim*, the cognizable injury is subordination, not exclusion: courts "don't just ask whether a candidate's name physically appears on the ballot;" the question is "whether the challenged restriction…unnecessarily burdens the availability of political opportunity." *Id.*

*Second*, the mechanism of suppression is the same. *Kim* credited expert proof of "a pervasive primacy effect that favors candidates in elections that appear in an early position on a ballot," *id.* at 150, and found that primacy would "significantly impact election results," *id.* at 157. Here, the EYEL relocates town and county races onto a ballot headed by presidential, gubernatorial, and congressional contests, where they appear last and suffer measurable roll-off. SAC ¶¶ 45, 61, 66, 69-73, 90. That the EYEL burdens every local candidate is no answer: the court in *Kim* asked not whether the rule singled anyone out but whether it foreclosed political opportunity. *Kim*, 99 F.4th at 157. The relevant comparison is between the local contest and the statewide and federal races above it—and the EYEL does not apply equally in any event: the EYEL does not apply to New York City. SAC ¶¶ 26-27, 37.

Indeed, the EYEL burdens speech more severely than county-level activity complained of in *Kim*. The EYEL is a statewide command, and Municipal Home Rule Law § 34(3) forecloses any opt-out. SAC ¶¶ 42, 54. Nor is the burden merely positional. The EYEL forecloses the channels through which local candidates actually communicate (SAC ¶ 56); severely increases the price of speech in elections which will be saturated by national spending (SAC ¶¶ 55, 57-58, 88); and degrades the information environment so that voters substitute party labels and demographic heuristics for evaluation of local candidates. SAC ¶¶ 55-65. Restricting the means of political communication is a core First Amendment injury. *Meyer v. Grant*, 486 U.S. 414, 424 (1988). Burdens of this magnitude are severe and demand strict scrutiny. *See Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 145-49 (2d Cir. 2000). Further, the evidence will show the Legislature and the Governor intended consolidation to submerge local speech in counties where Republicans hold local majorities but are the statewide minority. SAC ¶¶ 5, 52-53, 91.[3]

**The EYEL Fails Strict Scrutiny:** The asserted interest—turnout—is neither compelling nor served. Two of this Board's own Commissioners urged a veto, calling the bill an "ill-advised effort that will diminish the attention paid to local office elections while not meaningfully

---

[3] Discovery will show that the participation rationale was not the operative purpose of the law, SAC ¶¶ 5, 52-53, 91, and a pretextual interest cannot carry the State's burden under *Anderson-Burdick*.

**BREWER**

increasing voter participation."[4] The Association of Counties, representing all 57 counties outside New York City, sought a veto for the same reason. SAC ¶¶ 39-40. Less restrictive alternatives—targeted voter education and outreach—were available and untested. SAC ¶¶ 68, 92; *see Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 185-86 (1979). The statute is also underinclusive: it exempts New York City and offices whose terms are fixed by the State Constitution, withholding the consolidation the State calls "indispensable" from the State's largest concentration of voters. SAC ¶¶ 26-27, 37, 44. Underinclusiveness of that magnitude is strong evidence that the asserted interest is not the interest actually served. *City of Ladue v. Gilleo*, 512 U.S. 43, 52-53 (1994).

**In the Alternative, the EYEL Fails Even If the Burden Is Not Severe:** Alternatively, the EYEL fails even if the burden it imposes is not severe. "However slight that burden may appear,…it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (lead op.) (quoting *Norman*, 502 U.S. at 288-89); *accord Burdick*, 504 U.S. at 434 (State must identify "important regulatory interests"). The State may not rest on "mere speculation or conjecture"; it must show the recited harm is real and that the statute will materially alleviate it. *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994). The evidence will show the opposite: consolidation redistributes attention to the top of the ticket while roll-off suppresses the contests below. SAC ¶¶ 61, 66. An interest that is empirically unfounded, underinclusively pursued, and pretextual is not "legitimate," "important," or "sufficiently weighty" at any point on the *Anderson-Burdick* scale. Plaintiffs do not contend that every consolidation of federal, state, and local elections offends the First Amendment: a plaintiff must prove roll-off, cost, and ballot-position effects on a developed record and that the consolidation is neither adequately justified nor narrowly tailored. *See Kim*, 99 F.4th at 155. Plaintiffs meet both elements.

**Irreparable Harm:** "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013). The Candidate Plaintiffs must now make irreversible decisions on resources, organization, and messaging under an unconstitutional framework, and no damages remedy exists. SAC ¶¶ 97-101.

**The Request is Timely:** Plaintiffs previously sought this relief on June 26, 2026 (DE 47); it was denied as moot three days later because the First Amended Complaint was dismissed. Plaintiffs repleaded within ten days and now renew.

Until the even-year cycle began, the EYEL's burdens were mere forecasts. With the 2026 primaries concluded, they are today measured and specific. The affidavits accompanying the motion will set forth, in detail, that the candidates are paying significantly more to reach the same

---

[4] Letter from N.Y. State Bd. of Elections Comm'rs Anthony J. Casale & Co-Chair Peter S. Kosinski to Elizabeth Fine, Acting Counsel to the Governor, Re: Assembly Bill 4282-B / Senate Bill 3505-B (Recommendation: Veto) (July 19, 2023), https://www.nysac.org/media/bj5dq2um/state-election-commissioners-letter-against-even-year-local-elections-bill.pdf.

**BREWER**

August 10, 2026                                                                                          Page 4

voters; that previously-reliable election resources are declining for local races due to the contests above them; that local issues are failing to register with voters whose attention is focused on federal and state races; and that constituents are confused why they are voting again a year after filling the same offices.

**Balance of Equities and Public Interest:** The State has no legitimate interest in enforcing an unconstitutional statute, and securing First Amendment rights is in the public interest. *Walsh*, 733 F.3d at 488. New York City's local elections remain in odd years after City voters rejected the 2025 proposal to move them.[5] SAC ¶ 26. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006), is no obstacle: the relief sought restores the status quo ante rather than imposing a new regime, and relief remains feasible because the ballot is not yet certified. *See Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring).[6]

**Relief Requested:** Plaintiffs seek a preliminary injunction permitting the Candidate Plaintiffs to run under the pre-EYEL odd-year framework, pending merits adjudication.

**Requested Schedule:** Plaintiffs request an expedited schedule and propose filing their motion and expert declarations by August 17, 2026; Defendants to oppose by August 28, 2026; Plaintiffs to reply by September 2, 2026; with a hearing at the Court's earliest convenience. Plaintiffs respectfully request a decision on or before September 8.

Respectfully,

*/s/William A. Brewer III*
William A. Brewer III

**BREWER, ATTORNEYS
& COUNSELORS**

---

[5] Bd. of Elections in the City of N.Y., Statement and Return Report for Certification, General Election 2025 — Proposed Charter Amendment: Move Local Elections to Presidential Election Years to Increase Voter Participation (Dec. 2, 2025) (reporting citywide totals of 874,152 "Yes" votes and 978,611 "No" votes).

[6] N.Y. Elec. Law §§ 4-112(1), 4-114 (ballot certified September 9 and 10); *id.* §§ 10-108(1), 11-204(4) (UOCAVA transmittal September 18).